UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JEFFREY LEMAIRE,<br>*as trustee for the next-of-kin of*<br>*Marlyn LeMaire, decedent*,<br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BEVERLY ENTERPRISES MN, LLC,<br>*doing business as Golden LivingCenter-*<br>*Hopkins*,<br>　　　　　　　　　　Defendant. | Civil No. 12-1768 (JRT/TNL)<br><br>**MEMORANDUM OPINION AND**<br>**ORDER GRANTING MOTION TO**<br>**COMPEL ARBITRATION AND**<br>**STAY PROCEEDINGS** |

Kelly K. McNabb and Eric W. Hageman, **PRITZKER OLSEN, P.A.**, 45 South Seventh Street, Plaza VII, Suite 2950, Minneapolis, MN, 55402, for plaintiff.

Molly J. Given and Alana K. Bassin, **BOWMAN & BROOKE LLP**, 150 South Fifth Street, Suite 3000, Minneapolis, MN, 55402, for defendant.

Plaintiff Jeffrey LeMaire ("LeMaire") as trustee for the next-of-kin of Marlyn LeMaire brings this negligence and wrongful death action against defendant Beverly Enterprises MN, LLC, d/b/a Golden LivingCenter – Hopkins ("GLC"). The underlying facts giving rise to this action involve the death of LeMaire's father, Marlyn LeMaire, while in GLC's care. In the process of admitting his father to GLC's nursing home facility, LeMaire signed an agreement with GLC stipulating that any disputes arising from his father's stay at the facility would be settled in arbitration proceedings. GLC now moves the Court to compel arbitration and stay proceedings pursuant to the terms of

the agreement and 9 U.S.C. § 3. Because the arbitration agreement is valid, the Court will grant GLC's motion to compel arbitration and stay proceedings.

## BACKGROUND

### I. THE PARTIES

Defendant GLC operates a skilled nursing facility in Hopkins, Minnesota. (Compl. ¶ 4, July 23, 2012, Docket No. 1.) The GLC nursing facility is one of the nation's leading senior health care companies. (Aff. of Eric Hageman ¶ 1, Ex. 1, Sept. 17, 2012, Docket No. 14.) On November 6, 2010, Marlyn LeMaire became a resident of GLC. (*Id.* ¶ 9.)

### II. THE ADR AGREEMENT

In November 2010, GLC distributed an admissions packet to potential residents, including Marlyn LeMaire. The admissions packet included an Alternative Dispute Resolution Agreement ("ADR Agreement" or "the Agreement") drafted by GLC. (Aff. of Renee Schaff ¶ 8, Ex. A, Aug. 27, 2012, Docket No. 10.)

The ADR Agreement is four pages in length and provides that "any disputes covered by this agreement . . . that may arise between [the parties] shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration." (Schaff Aff., Ex. A at 1.) Pursuant to the Agreement, arbitration is to take place "in the federal judicial district in which Facility is located or the hometown of Resident, before one arbitrator." (*Id.*, Ex. A at 3.) The GLC facility is

located within the District of Minnesota. LeMaire is a resident of Hennepin County, Minnesota. (Compl. ¶ 1.)

> Disputes covered by the Agreement include, but are not limited to,
>
> any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

(*Id.*, Ex. A at 2.) With respect to the recovery that may be sought for any of these claims brought in arbitration, the Agreement allows the parties to seek recovery in the form of "any equitable or legal remedy," including punitive damage awards and injunctive relief. *See* JAMS Streamlined Arbitration Rules & Procedures, Rule 19(b)(d)-(f), http://www.jamsadr.com/rules-streamlined-arbitration/#Rule2; *see also* JAMS Comprehensive Arbitration Rules, Rule 24(c)(e)-(g), http://www.jamsadr.com/rules-streamlined-arbitration/#Rule2.[1]

The ADR Agreement provides, with respect to fees and costs that

> [w]here Resident initiates arbitration against Facility, the only fee required to be paid by Resident is $250, which is approximately equivalent to a court

---

[1] The arbitration proceedings are to "be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures in cases where no disputed claim or counterclaim exceeds $250,000, not including interest or attorneys' fees, and by its Comprehensive Arbitration Rules and Procedures in all other cases." (Schaff Aff., Ex. A at 2.)

filing fee; all other fees and costs, including any remaining JAMS case management fees and professional fees for the arbitrator's services, shall be paid by Facility. Where Facility initiates arbitration, Facility will pay all fees and costs associated with the arbitration other than Resident's attorney fees, if any. The Parties shall bear their own costs and attorney's fees except that the arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

(Schaff Aff., Ex. A at 3.)

The Agreement also contains several provisions, alerting the signor that by signing the Agreement he would be giving up certain legal rights. In capitalized, bold lettering in the middle of the first page, the ADR Agreement provides:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

(Schaff Aff., Ex. A at 1 (emphasis in original).) The Agreement further provides that "the resident understands he has a right to seek advice of legal counsel." (*Id.*, Ex. A at 3.) On the signature portion of the Agreement, the following words appear in large, capitalized, bold letters across the top: "**THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. PLEASE READ IT CAREFULLY AND IN ITS ENTIRETY BEFORE SIGNING**." (*Id.*, Ex. A at 5 (emphasis in original).)

Finally, the Agreement specifies that "signing . . . is not a condition of admission" and that the signor "may revoke this Agreement . . . within thirty (30) days of signing it."

(*Id.*, Ex. A at 3.)  The ADR Agreement also includes a caption across the top of the first page which reads, "THIS AGREEMENT IS NOT A CONDITION OF ADMISSION TO OR CONTINUED RESIDENCE IN THE FACILITY."  (*Id.*, Ex. A at 1.)

### III.   THE CIRCUMSTANCES SURROUNDING THE AGREEMENT

When LeMaire was presented the admissions packet containing the ADR Agreement, GLC staff did not explain the Agreement to him.  (Aff. of Jeffrey LeMaire ¶ 11, Sept. 17, 2012, Docket No. 15.)  GLC staff also did not warrant to LeMaire that signing the ADR Agreement was a prerequisite to gaining admission to the GLC facility.  (Aff. of Chris Turner ¶¶ 1,2, & 5, Oct. 1, 2012,  Docket No. 18.)  GLC has admitted several patients who chose not to sign the Agreement.  (*Id.* ¶ 5.)

On behalf of his father, LeMaire signed the ADR Agreement on November 11, 2010.  (Schaff Aff. ¶ 9, Ex. B at 8.)  LeMaire was unfamiliar with arbitration agreements at the time he signed the ADR Agreement, as he has little business or contract experience.  (LeMaire Aff. ¶ 16.)

Marlyn LeMaire died at the GLC facility on March 4, 2011.  (Compl. ¶ 9.) LeMaire attributes his father's death to GLC's failure to provide proper care.  In July 2012, LeMaire brought this action against GLC alleging three counts of negligence and one count of wrongful death.  (*Id.* ¶¶ 20-34.)  GLC now moves to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, and the Minnesota Uniform Arbitration Act ("MUAA"), Minn. Stat. § 572B.07.

**ANALYSIS**

**I.     STANDARD OF REVIEW**

A party who believes that a dispute is subject to arbitration may move for an order compelling arbitration and staying the proceedings. 9 U.S.C. § 3. In ruling on a motion to compel arbitration and stay proceedings under the FAA, a district court does not determine the merits of the substantive issues, but rather simply whether the parties have agreed to submit a particular grievance to arbitration. *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008). When considering such a motion, the Court is therefore limited to determining: (1) whether the specific dispute is within the scope of the agreement; and (2) whether a valid agreement to arbitrate exists between the parties. *Pro Tech Indus. Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

The Federal Arbitration Act provides that an arbitration provision in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Both parties agree that the ADR Agreement is a "contract evidencing a transaction involving commerce" and, thus falls within the scope of the FAA.[2]

---

[2] As an agreement to submit to arbitration that is contained in the record, the ADR Agreement falls with the scope of the MUAA, as well. The MUAA provides, in relevant part, "An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable

(Footnote continued on next page.)

The Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . ." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The arbitration agreement shall be construed liberally, "with any doubts resolved in favor of arbitration." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005). As the party seeking to avoid arbitration, LeMaire bears the burden of proving that the claims at issue are not suitable for arbitration. *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91-92 (2000).[3]

## II. VALIDITY OF THE ADR AGREEMENT

The only issue before the Court is whether the ADR Agreement is valid and enforceable. LeMaire disputes the validity of the ADR Agreement, arguing that it is an unconscionable adhesion contract.

---
(Footnote continued.)

except upon a ground that exists at law or in equity for the revocation of contract." Minn. Stat. § 572B.06(a).

[3] The standard of review is the same for the MUAA. *See Amdahl v. Green Giant Co.*, 497 N.W.2d 319, 322 (Minn. Ct. App. 1993) (citing *United States Fid. & Guar. Co. v. Fruchtman*, 263 N.W.2d 66, 70-71 (Minn. 1978) (finding that the standard in reviewing a motion to compel arbitration under the MUAA is limited to (1) whether a valid arbitration agreement exists, and (2) whether the dispute falls within the scope of the arbitration)); *see also Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn. 1995) (explaining that doubts concerning the scope of arbitrable disputes are resolved in favor of arbitration); *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 349 (Minn. 2003) (stating that the party opposing the arbitration bears the burden of proving that the dispute is outside the scope of the agreement).

A contract is unconscionable if it is "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co., Inc.*, 589 N.W.2d 499, 502 (Minn. Ct. App. 1999) (quoting *Hume v. United States*, 132 U.S. 406, 415 (1889)). Generally, courts refuse to enforce contracts as unconscionable where the terms of the contract itself are unreasonably favorable to one party and where the circumstances surrounding the signing of the contract indicate that one party had no meaningful choice but to accept the contract. *See RJM Sales & Mktg., Inc. v. Banfi Prods. Corp.*, 546 F. Supp. 1368, 1375 (D. Minn. 1982). In assessing whether an agreement is unconscionable, the Court must consider all of the facts and circumstances as a whole. *Pickerign v. Pasco Mktg., Inc.*, 228 N.W.2d 562, 565 (Minn. 1975).

The Court finds that the ADR Agreement was not so unreasonably favorable to GLC as to be substantively unconscionable. First, under the Agreement LeMaire retains all of his substantive rights[4] to raise claims and can bring the same wrongful death and

---

[4] To the extent LeMaire is arguing that the waiver of his right to a jury trial in the Agreement renders the Agreement substantively unconscionable, the Court also rejects this argument. The jury trial waiver in the ADR Agreement is not unreasonably favorable to GLC because the provision applies equally to both LeMaire and GLC. Additionally, the provision waiving the right to a jury trial does not support a finding of procedural unconscionability because the provision clearly states that the right to a jury trial is being waived, notifies that signor that he may wish to seek legal counsel, and is written conspicuously in bold letters within an Agreement that is only four pages. *See Ikechi v. Verizon Wireless*, Civ. No. 10-4554, 2012 WL 3079254, at *6 (D. Minn. July 6, 2012) (rejecting the argument that an arbitration clause was invalid because it deprived the plaintiff of a right to a jury trial where the agreement stated in capitalized, bold letters that "there's no . . . jury in arbitration"), *report and recommendation adopted sub nom. Albert v. Verizon Wireless*, Civ. No. 10-4554, 2012 WL 3079072, *1 (D. Minn. July 30, 2012); *see also Chiafos v. Rest. Depot, LLC*, Civ. No. 09-0499, 2009 WL 2778077, at *6 (D. Minn. Aug. 28, 2009) (upholding an arbitration agreement that caused

(Footnote continued on next page.)

negligence claims in arbitration as he brings in this action. *See Chiafos v. Rest. Depot, LLC*, Civ. No. 09-0499, 2009 WL 2778077 at *6 (D. Minn. Aug. 28, 2009) (rejecting unconscionability claim where plaintiff did not lose any substantive rights by agreeing to arbitrate, because she could bring her discrimination claims in arbitration proceedings). The Agreement also places no monetary cap on the amount of damages LeMaire may seek in arbitration, nor does it limit the type of damages LeMaire may seek. *See Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1461 (D. Minn. 1996) (finding that an arbitration agreement could be unconscionable if it limited plaintiff's ability to recover "the full array of statutory remedies established under state and federal law").[5]

Additionally, the ADR Agreement does not place undue financial burdens on LeMaire. *See Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1041 (D. Minn. 2006) ("An arbitration clause which imposes too heavy a financial burden may be unconscionable.") (citing *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 90 (2000)). The Agreement does not subject LeMaire to burdensome travel time

_____
(Footnote continued.)

signatory to waive jury trial rights, even though the agreement made no reference to the fact that signing would constitute such a waiver); *Ottman v. Fadden*, 575 N.W.2d 593, 597 (Minn. Ct. App. 1998) (rejecting the argument that an arbitration agreement was invalid because it denied the plaintiff a right to trial by jury).

[5] LeMaire argues that the ADR Agreement is substantively unconscionable because it places a cap on the amount of damages he can seek, and because it does not allow him to seek punitive damages or injunctive relief. However, the Agreement merely directs the arbitrator as to what rules to apply to the arbitration proceeding depending on the parties' alleged damage amounts. Additionally, the JAMS Arbitration Rules and Procedure that govern the arbitration proceeding pursuant to the ADR Agreement allow for the recovery of both punitive damages and injunctive relief.

and expenses, because, according to the Agreement, arbitration will be conducted in Minnesota, where LeMaire resides. *See id.* at 1042 (finding that arbitration agreements can be upheld even when they require travel for one party). Also, under the Agreement, GLC is responsible for virtually all fees, with the exception of a filing fee of $250. *See Chiafos*, 2009 WL 2778077, at *6 (upholding an arbitration clause which required defendant to be responsible for 100% of the costs of arbitration, subject to a 50% cost assessment at the arbitrator's discretion).[6]

Indeed, the ADR Agreement is more favorable to LeMaire than many arbitration agreements that have been upheld.[7] In addition to the provisions described above, the ADR Agreement also informed LeMaire of his right to seek counsel before signing the Agreement, and even allowed LeMaire to revoke his assent up to thirty days after signing the Agreement. In sum, the Court finds that the terms of the ADR Agreement are not substantively unconscionable.

On the other hand, several factors surrounding the signing of the Agreement could contribute to a finding of procedural unconscionability. There is a disparity in bargaining power between LeMaire and GLC, and LeMaire has very little business experience. *See*

---

[6] The $250 fee LeMaire is required to pay under the arbitration agreement is less than the $350.00 fee required to file a complaint in this court. *See* 28 U.S.C. § 1914(a).

[7] *See, e.g.*, *M.A. Mortenson Co. v. Saunders Concrete Co.*, Civ. No. 11-935, 2011 WL 2672248, at *5 (D. Minn. July 8, 2011) (finding that an arbitration agreement was not substantively unconscionable even though the arbitration clause gave one party the sole discretion to choose whether or not to arbitrate, and required the challenging party who lived in New York to arbitrate disputes in Minnesota); *Chiafos*, 2009 WL 2778077, at *6 (finding that an arbitration clause was not substantively unconscionable, even though it provided that the plaintiff could be required to bear 50% of the costs, at the arbitrator's discretion).

*Ottman v. Fadden*, 575 N.W.2d 593, 597 (Minn. Ct. App. 1998) (finding that where plaintiff was "a sophisticated individual dealing in a sophisticated industry" an arbitration clause was not a procedurally unconscionable). Additionally, GLC did not explain the terms of the ADR Agreement to LeMaire, and it was presented to LeMaire in the midst of an entire packet of information. *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 859 (8th Cir. 2008) (assessing the conspicuousness of a clause in determining whether it was procedurally unconscionable). The Court is aware that arbitration agreements can be lengthy and detailed, and are often presented to nursing home residents and their families when they are facing difficult emotional decisions, in need of prompt medical care, and potentially susceptible to being taken advantage of.

However, other factors present in this case weigh against a finding of procedural unconscionability. For example, LeMaire was free to decline to be bound by the terms of the ADR Agreement, and admission was specifically not conditioned on signing the ADR Agreement. *See Siebert*, 422 F. Supp. 2d at 1041 (finding that no contract of adhesion existed where plaintiffs were free to choose whether to be bound by terms of the agreement, or to decline to do so). Additionally, it was not GLC's practice to exclude potential residents based on their refusal to sign the ADR Agreement. Indeed, GLC has admitted several patients that refused to sign the arbitration agreement. Thus, although the record demonstrates some evidence of procedural unconscionability, the Court finds that in light of the substantive reasonableness and fairness of the Agreement's terms, there is insufficient evidence of procedural unconscionability to render the Agreement as

a whole unenforceable. Therefore, the Court concludes that the ADR Agreement is not unconscionable, and is therefore enforceable.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to compel arbitration and stay proceedings [Docket No. 6] is **GRANTED**.

2. The case shall be **STAYED** pending the outcome of the arbitration and the parties shall submit a joint letter to the Court following the arbitration indicating whether there are further issues for the Court to resolve.

DATED: January 9, 2013       ____s/ John R. Tunheim____
at Minneapolis, Minnesota.       JOHN R. TUNHEIM
     United States District Judge